IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

J&J SPORTS PRODUCTIONS, INC.
as Broadcast Licensee of the
May 1, 2010 Mayweather/Mosley
Broadcast                                                                          PLAINTIFF

v.                                      Case No. 2:11-CV-02051

MARIA L. DIAZ DE LEON, Individually, and d/b/a
EL COYOTE, a/k/a COYOTE SPORTS BAR, a/k/a
EL COYOTE SPORTS BAR                                              DEFENDANTS

**DEFAULT JUDGMENT**

Plaintiff J&J Sports Productions, Inc. ("J&J") brought this action alleging that Defendant Maria L. Diaz de Leon ("de Leon"), individually, and El Coyote a/k/a Coyote Sports Bar a/k/a El Coyote Sports Bar ("El Coyote"), knowingly and willfully violated the Communications Act of 1934, as amended, 47 U.S.C. §§ 553 and 605, by unlawfully intercepting and exhibiting the Mayweather/Mosley Program ("the Program") on May 1, 2010.  Defendants have failed to appear in this action, and the Clerk entered default (Doc. 12) against them on May 19, 2011. Currently before the Court are Plaintiff's Motion for Default Judgment (Doc. 11) and various documents filed in support.

**I. Background**

"Upon default, the factual allegations of a Complaint (except those relating to the amount of damages) are taken as true." *Murray v. Lene*, 595 F.3d 868, 871 (8th Cir. 2010).  Therefore, the Court views the facts in this case as set forth in Plaintiff's Complaint (Doc. 1) as true as a consequence of Defendants' default.  Plaintiff has established in the Complaint and through the Affidavit of J&J's President, Joseph Gagliardi, (Doc. 11-1) that Plaintiff owns the distribution rights

-1-

to the May 1, 2010 Mayweather/Mosley Program which was broadcast either by closed circuit television or by encrypted satellite signal. Commercial establishments wanting to legitimately receive an unscrambled signal in order to provide their patrons with the opportunity to view the Program were required to contract with Plaintiff and pay a fee.

In order to combat illegal exhibition of the Program by commercial establishments who had not contracted with Plaintiff and paid the required fee, Plaintiff hired investigative agencies to send undercover auditors to various Fort Smith locales on the night of May 1, 2010 to catch any establishments engaging in such signal piracy. One of the auditors so dispatched, Cara Trembly, went to El Coyote, located at 2917 Midland Blvd., at approximately 9:40 P.M. on the night in question. Trembly, recording her observations by way of a concealed camera, observed two television sets airing the Program. Trembly was not assessed a cover charge to enter El Coyote. She counted about 30 patrons and estimated the capacity of El Coyote to be 50-100 people. Plaintiff has submitted an affidavit signed by Trembly (Doc. 11-1, pp. 17-18), as well as the undercover video recording taken by Trembly (Exh. D to Doc. 11-1), to substantiate Trembly's claims.

Defendants failed to answer the Complaint despite being appropriately served (*see* proof of service, Doc. 6). Plaintiff reported to the Court that Defendant de Leon sent a letter to Plaintiff's counsel on April 22, 2011, though the letter is dated April 18, 2011. (Doc. 9, p. 4). In the letter, Defendant de Leon apologized "for all the inconvenience that I have caused," said she was "willing to pay some of the debt," but felt "that it was not my fault." *Id.* Defendant de Leon did not file the letter with the Court. Plaintiff's counsel avers that she sent a communication to Defendant de Leon on April 25, 2011, requesting that Defendant de Leon contact Plaintiff's counsel to discuss the matter. Doc. 9, pp. 1-2. In any event, Defendants never answered the Complaint or appeared in any manner before the Court in this litigation, and Defendant de Leon's private communication with Plaintiff's counsel shall not be deemed by the Court to be an answer to the Complaint. Accordingly, Defendants are in default, and it is now the Court's task to enter an appropriate judgment.

-2-

## II. Discussion

Plaintiff alleges that Defendants violated both 47 U.S.C. § 553 and 47 U.S.C. § 605, but without the benefit of discovery or an admission from Defendants, Plaintiff is unable to determine exactly how Defendants intercepted its signal. Courts have been divided as to when to apply § 553 of the FCA and when to apply § 605. Some courts have even allowed recovery under both statutes. *See e.g.*, *Joe Hand Promotions, Inc. V. TL Productions, LLC*, 2010 U.S. Dist. LEXIS 57889 (E.D. Mo. 2010)(awarding statutory damages for signal piracy under both § 553 and § 605). Other courts have explicitly stated that a plaintiff may not simultaneously pursue relief under both sections, because the sections target two distinct types of piracy. *See e.g.*, *United States v. Norris*, 88 F.3d 462 (7th Cir. 1996)(holding that unauthorized interception of television programming transmitted by satellite is governed by § 605, whereas unauthorized interception of programming transmitted through cable network is governed by § 553).

Although alleging a violation of both statutes, Plaintiff seeks damages only under § 605. Due to Defendants' default, Plaintiff cannot conclusively determine how Defendants pirated the Program on May 1, 2010. However, Plaintiff asserts that Defendants failed to lawfully obtain the Program by contracting with Plaintiff and paying the required fee and, therefore, must have taken some unlawful action in order to intercept and receive the Program. Based on Plaintiff's Complaint and exhibits in support of its Motion for Default (Doc. 11), the Court finds that Defendants must have pirated the event through use of any one of many possible illegal methods. Because the Court must accept the factual allegations of the Complaint as true due to Defendants' default, the Court further finds that Defendants pirated the event in violation of 47 U.S.C. § 605 as clearly alleged in the Complaint. Although Plaintiff also alleges a violation of § 553, Plaintiff is not seeking damages under that section, and the Court, therefore, declines to address whether an award of damages under both section §553 and § 605 may be appropriate or allowable in this or any other case.

Personal liability against Defendant de Leon is appropriate in this case based upon the

-3-

allegations of the Complaint, which states that upon information and belief, de Leon had supervisory capacity and control over, and received a financial benefit from, the activities occurring within El Coyote on May 1, 2010 (Doc. 1, ¶¶ 9-11).  *See Joe Hand Promotions, Inc. v. Ewer et al.,* 2009 U.S. DIST LEXIS 100415 at *4-*5 (E.D. Wis. 2009) (finding individual who was officer, director, shareholder, and/or principal of corporation that operated bar personally liable in his individual capacity under § 605 for bar's unlawful interception and exhibition of pay-per-view UFC fight, where he admitted by default that he had control over interception and received financial benefits therefrom) (citing *J&J Sports Prods., Inc. v. Ribeiro*, 562 F. Supp. 2d 498 (S.D.N.Y.)).  A corporate officer "who has the ability to supervise [the intercepting] activity and has a financial interest in that activity, or who personally participated in that activity, is personally liable for the [interception]." *Joe Hand Promotions, Inc. v. Kaczmar et al*, 2008 U.S. DIST LEXIS 88199 at *2 n. 1 (N.D. Ill. 2008) (alterations in original) (internal quotations omitted).

A claimant entitled to relief under § 605 may elect actual or statutory damages pursuant to § 605(e)(3)(C)(I).  Plaintiff has elected statutory damages, which range from a minimum of $1,000 to a maximum of $10,000 "as the court considers just." 47 U.S.C. § 605(e)(3)(C)(i)(II).  In addition, enhanced damages of up to $100,000 are permitted, in the discretion of the court, "[i]n any case in which the court finds that the violation was committed willfully and for purposes of direct or indirect commercial advantage or private financial gain." 47 U.S.C. § 605(e)(3)(C)(ii). The undisputed evidence shows that Defendants violated 47 U.S.C. § 605 by knowingly and willfully intercepting the Program, and offering the Program to patrons of their establishment for private financial gain or commercial advantage. "[I]ntentional acts are required to pirate a closed-circuit broadcast; the unscrambled airwaves or cable transmission do not just happen." *Joe Hand Promotions, Inc. v. Cat's Bar, Inc.*, 2009 U.S. DIST LEXIS 20961 at *6 (C.D. Ill. 2009).  Commercial advantage or financial gain can also reasonably be inferred from the facts. Given that El Coyote is a commercial establishment, it may be reasonably inferred that Defendants' actions in airing the Program were for

purposes of direct or indirect commercial advantage by drawing customers into the business.  In addition, "the court may draw an inference of willfulness from a defendant's failure to appear and defend an action in which the plaintiff demands increased statutory damages based on allegations of willful conduct." *J&J Sports Prods., Inc. v. Acevedo et al*, 2010 U.S. DIST LEXIS 48341 at *8 (E.D. Ark. 2010)(citations omitted).  Thus, the Court may award enhanced damages, bringing the potential range for total damages to $1,000 to $110,000.

Courts have gone about calculating statutory and enhanced damages for violations of § 605 in various ways, considering "both the nature of the violation in light of the statutory scheme involved, as well as the particular circumstances concerning the defendant[s'] actions." *DirecTV, Inc. v. Schulien*, 401 F. Supp. 2d 906, 915 (N.D. Ill. 2005) (citations omitted).  In the instant matter, the auditor hired by Plaintiff estimated the capacity of El Coyote to be 50-100 people.  Plaintiff alleges that Defendants would have paid approximately $4,200 to purchase the program properly, based upon the estimated capacity of the establishment.  *See* Doc. 11-1, p. 15.  In addition, Defendants should disgorge any profits realized from increased sales of food and beverages due to increased patronage of people wanting to see the fight.  On May 1, 2010, the auditor hired by Plaintiff counted from 25-30 patrons at El Coyote at the time the Program was being shown.  No cover was charged, nor is there any evidence that Defendants had previously engaged in signal piracy.  Plaintiff has likewise presented no evidence that Defendants advertised the showing of the Program in order to draw in customers. The overall profit gained as a result of the illegal showing of the Program was likely, therefore, minimal to moderate.  However, the goal of deterring future signal piracy should also be considered, as well as the loss of goodwill that Plaintiff suffers when paying customers see potential patrons lost to establishments that have illegally obtained the Program for free.  Finally, Plaintiff is entitled to an award of enhanced damages due to the Court's finding that Defendants' conduct was willful and for financial gain.

The amount of statutory damages to be awarded is left to the court's discretion.  In order to

arrive at an appropriate sum to be awarded as damages, the Court has reviewed analogous cases. All the facts and circumstances of this case considered, the Court finds that Plaintiff should be awarded a total of $15,000. This amount includes $5,000 in statutory damages, to include lost revenues to Plaintiff as well as some disgorgement of profits gained by Defendants as a result of exhibiting the Program. The total award amount further includes $10,000 in enhanced damages, using a multiplier of two from the base statutory damages, for Defendants' willful violation. This penalty should be sufficient to deter future signal piracy without being so harsh as to seriously impair the viability of Defendants' business.

Finally, an award of attorney's fees and costs is mandatory where the Court finds a violation of § 605. 47 U.S.C. § 605(e)(3)(B). Plaintiff has substantiated costs and fees totaling $2,235.25, which the Court finds to be reasonable. The Court therefore awards Plaintiff $2,235.25 for attorney's fees and costs.

For the reasons set forth above, the Court hereby **GRANTS** Plaintiff's Motion for Default Judgment (Doc. 11). It is hereby **ORDERED AND ADJUDGED** that Plaintiff J&J Sports Productions, Inc. **shall have and recover jointly and severally** from separate defendants Maria L. Diaz de Leon, and El Coyote a/k/a Coyote Sports Bar a/k/a El Coyote Sports Bar, **judgment in the total amount of $17,235.25**. The judgment amount shall bear interest at the prevailing legal rate of 0.24% per annum from the date of entry of this order until paid. *See* 28 U.S.C. § 1961.


IT IS SO ORDERED AND ADJUDGED this 11th day of January, 2012.


/s/ P. K. Holmes, III
P.K. HOLMES, III
UNITED STATES DISTRICT JUDGE